## J. H. GARVER v. THE TERRITORY OF OKLAHOMA.

1. INDICTMENT—*Exception.* It is unnecessary to negative an exception not embraced within the same clause which defines and creates the offense, and which constitutes no part of the discription of the offense. When an exception is contained in a distinct section it is a matter of defense.

2. INTENT—*Unnecessary to Prove.* Where the intent to commit the act charged in an indictment is not necessarily an ingredient of the crime as defined by the statute, then the fact that the act may have been committed under an ignorance or mistake of fact, is no defense to the crime charged.

3. INSTRUCTIONS—*Held to Be Proper.* Where a defendant is charged with the crime of carelessly permitting a prisoner lawfully held in custody to escape, it is not error for the court to charge the jury that in determining whether or not the defendant was careless, they might consider the gravity of the crime with which the prisoner was charged, their sentences, physical strength, etc., and that what might be ordinary care for the keeping of prisoners held for petty crimes, or where prisoners were weak and infirm, might be gross negligence in the former.

4. DUTY OF JAILOR. Neither was it error for the trial court to charge that it was the duty of the jailor to use the doors, bolts, and locks of the jail in a manner likely to prevent escapes and in the way they were planned to be used for the safe keeping of the prisoners.

*Appeal from the District Court of Oklahoma County.*

Appeal of J. H. Garver, who was convicted in the district court of Oklahoma county of carelessly allowing prisoners to escape from the jail of Oklahoma county, while he was acting jailor thereof. The opinion states all the facts necessary for a consideration of the case.

*P. Woolridge*, and *Reddick, Lewis & Snyder*, for appellant.

*C. A. Galbraith, Attorney General*, and *J. L. Brown, County Attorney of Oklahoma County*, for appellee.

The opinion of the court was delivered by

DALE, C. J.:    J. H. Garver, appellant, was indicted at the November, 1895, term of the court sitting in Oklahoma county, under § 2010, Statutes of Oklahoma, charged with carelessly permitting prisoners to escape from the Oklahoma county jail.   It appears from the record before us that Garver was the jailor of Oklahoma county, and that William Christian and Robert Christian and James Casey were confined in the jail, the former two upon a conviction had in Pottawatomie county of the crime of manslaughter, for which crime sentences in the penitentiary had been imposed, in each case, of ten years, and that after such conviction they were sent to the Oklahoma county jail for safe keeping for a period of time in order that they might give bail pending an appeal to the supreme court.   Casey was under indictment in Canadian county for the crime of murder, and he also had been ordered for safe keeping to be held in the Oklahoma county jail awaiting trial.   While the parties were so confined they escaped, and Garver, being jailor in charge, was indicted for carelessness in permitting them to so escape.

A stipulation signed by the attorneys of record, which appears upon page 7, makes it necessary for us to examine at length the evidence in the record of the case-made, and practically eliminates all questions save the sufficiency of the indictment and the instructions of the court; the stipulation being to the effect "that appellant would

not insist, in the supreme court, that there was not sufficient evidence to support the verdict under the rulings and instructions of the lower court." This stipulation appears to have been made in order to avoid bringing up the evidence of all the witnesses.

A demurrer to the indictment was duly filed and counsel insist that such demurrer should have been sustained, because the indictment failed to aver that the negligent acts of Garver, which constitute the offense, and which are set out in the indictment, were not done or committed under an ignorance or mistake of fact; and in support of this contention cite the fifth division of § 2, art. 2, p. 424, Statutes of 1893. The section in which this subdivision is found, together with the explanatory provision of the section found at the begining thereof, is as follows:

"All persons are capable of committing crimes, except those belonging to the following classes:   *   *    .

"Fifth. Persons who committed the act or made the omission charged under an ignorance or mistake of fact which disproves any criminal intent. But ignorance of the law does not excuse from punishment for its violalation."

It is contended that the statute applies to the charge contained in the indictment against Garver, and that an omission to negative the exception makes the indictment bad on demurrer; that the statute has a general application to all classes of crimes, and that if the defendant is guilty he must come within the excepting clause.

It was unnecessary to incorporate the exception in the indictment. The exception was neither expressed in the same clause nor is it a part of the section that defines and creates the offense, and does not constitute a part of the description of the offense; in fact the exception is found

under art. 2 of our Crimes Act, which has for its title the following words: "Of persons liable to punishment for crimes," while the offense charged is found in art. 14, under the head of: "Other Offenses Against Public Justice." The two statutes have no direct connection, and it is well settled that unless the exception is embraced in the same clause or forms a part of the section which describes the offense, it need not be negatived in an indictment. (*State v. Thompson*, 2 Kan. 452; *Harding v. People*, 10 Col. 387).

It is urged that the trial court erred in not instructing the jury, as requested by the appellant, that if the defendant made the omission charged under an ignorance or mistake of fact which disproves any criminal intent, he should not by the jury be found guilty of the crime. The indictment is drawn under the first subdivision of § 2, art. 14, of our Crimes Act, which reads as follows:

"Every sheriff, coroner, clerk of a court, constable, or other ministerial officer, and every deputy or subordinate of any ministerial officer who either:

"First. Wilfully or carelessly allows any person lawfully held by him in custody to escape or go at large, except as may be permitted by law;"    *    *    (Statutes Okla. 1893, p. 446.)

. It will be seen by the language above used that the legislature intended to denounce two crimes, one for wilfully allowing a person to escape, and the other, of carelessly allowing such escape. The disjunctive "or," as used, clearly indicates that it was the intention to make carelessness alone, in the care and keeping of a prisoner in lawful custody, a crime, if, as the result of such carelessness, a person escapes. This being true, can it be said that the legislature intended to apply the exception

contained in § 2, art. 2, *supra*, to the crime of carelessly permitting a person to escape? If we hold to such a view it will be seen that § 2, art. 14, will be of no force whatever in so far as it attempts to make carelessness the basis of a crime, as we cannot think it possible that any person may be found guilty of simply carelessly doing a criminal act if before conviction could be had it is necessary for the prosecution to prove beyond a reasonable doubt that he committed such act with a criminal intent, or, that he did not commit it or make the omis-sion charged under an ignorance or mistake of fact. An examination of the language, as used in denouncing the crime of carelessly allowing an escape, together with that used in the fifth subdivision of § 2, art. 2, *supra*, demonstrates that the latter can have no application to the former. The word "carelessly," as used in the law, does not import a criminal intent. It is clearly apparent that it was the intention to make the crime complete without regard to the intent; that the fact that by reason of carelessness alone a person might escape was in the mind of the legislature a sufficient reason for pun-ishment. If, then, carelessness alone was the crime sought to be punished, it follows that the intent with which the act was committed is immaterial, and an ignorance or mistake of fact which would disprove a criminal intent would be no defense to the charge. If, under the statute, it is unnecessary to prove or establish a criminal intent, to show that no such intent existed would be no defense. As we view this law it is of that class of prohibitive statutes which are designed for the protection of the public, such, for instance, as statutes which prohibit the sale of intoxicating liquors without a license, or to prohibit such sale to minors; or prohibit the sale of adulterated goods, or which prohibit sexual

intercourse with a.girl under sixteen years of age, or keeping a house of ill-fame, or bigamy, and other statutes of like character.   In *Com. v. Sellers*, 130 Pa. 32, a case arose very similar in principal to the one we are here considering.   Sellers was indicted and convicted for the sale of liquors to minors.   It was contended upon appeal that the trial court erred in not quashing the indictment because it did not aver that the defendant knowingly and wilfully furnished the intoxicating liquors, and upon this the court said:

"The subject of complaint in the first and second specifications is that the court erred in not quashing the indictment before a jury was sworn, because it does not aver that the defendant knowingly and wilfully furnished the intoxicating liquors, etc.   To that it may be answered that the indictment is not under the former law, but under the seventeenth section of the act of May 13, 1887, in which the words knowingly and wilfully are not employed.   It charges the facts substantially in the language of the act prohibiting it and prescribing the punishment, and is therefore sufficient, according to the provisions of our code of criminal procedure."

The same principle was afterwards affirmed in a later case, *Com. v. Holstine*. 132, Pa. 357.   In *Com. v. Boynton* 2 Allen, 160, a case arose where a man was convicted of the sale of intoxicating liquors, although he did not know or suppose the liquors sold by him to be intoxicating, and it was held that it was not necessary to allege or prove that the person charged with the offense knew the illegal character of the act, and in discussing the question the court takes occasion to lay down the following as the correct doctrine:

"The court is of the opinion that the sale of intoxicating liquors in violation of the statute prohibition is not one of those cases in which it is necessary to allege

or prove that the person charged with the offense knew the illegal character of his act, or in which the want of such knowledge would avail him in defense. If the defendant purposely sold liquor which was in fact intoxicating, he was bound at his peril to ascertain the nature of the article which he sold. Where the act is expressly prohibited, without reference to the intent or purpose, and the party committing it was under no obligation to act in the premises unless he knew that he could do so lawfully, if he violates the law he incurs the penalty. The salutary rule that every man is conclusively presumed to know the law is sometimes conducive of hardship in particular cases, and the hardship is no greater where the law imposes the duty to ascertain a fact."

This opinion was afterwards cited with approval in *Com. v. Doodman*, 97 Mass. 103, and in *Com. v. Hattett*, 103 Mass. 452, and in the same state the principle announced has been held applicable to bigamy. And also in case of adultery. (*Com. v. Elwell*, 2 Met. 190). And to the same effect is *Harding v. People, supra.*

As we construe the law, it is unnnecessary to allege an intent where the statue does not make the intent a necessary ingredient of the offense, and this view of the law appears to be well supported by the adjudicated cases.

The fourth and fifth errors assigned arise on instructions sixteen, seventeen and eighteen, and will be considered together. In instructions sixteen and seventeen the jury were advised that, in determining the carelessness of the defendant, they might consider the gravity of the crime with which the prisoners were charged, their sentences, physical strength, etc. That what might be ordinary care for the keeping of prisoners held for petty crimes, or where prisoners were weak and infirm, might be gross negligence in the former. And in the eighteenth instruction the court told the jury in substance

that it was the duty of the jailor to use the bars, bolts and locks in a way likely to prevent escapes, and in a way they were planned to be used for safe keeping. These instructions are objected to because, as stated, the crime would be complete whether the negligence was gross or otherwise, if thereby the prisoners escaped, and for the further reason that instruction eighteen is argumentative. These objections are not well taken. As a matter of law it would not be negligence to permit a person accused of a petty crime, or who was weak. or infirm, liberties which should not be granted to prisoners under long sentences in the penitentiary or who were awaiting trial charged with the crime of murder. In the former case there would be but small incentive to escape, while in the latter there would exist at all times, in the mind of the prisoner, an uncontrolable desire, as well as an inducement, to escape. This fact is one within the common knowledge of all, and should especially be in the mind of a person who assumes the responsible position of jailor, and this being true, it was not error for the court to instruct the jury that the negligence of the defendant should be considered with reference to such fact. Neither was in error to instruct the jury that it was the duty of the defendant to use the jail appliances in the way they were planned to be used. Bars, bolts and locks are procured to be used for the safe keeping of prisoners, and if the jailor is negligent in using these as intended, and thereby makes it possible for prisoners to escape, he is guilty of that degree of carelessness which the law intends to punish.

The sixth objection raised charged that "the instructions as a whole are argumentative inconsistent, and contradictory, conveys to the jury that the court is of the

opinion that the defendant is guilty and gives undue prominence to the territory's side of the case." Counsel for appellant fail in any manner to point out the portions of the instructions that are either inconsistent or contradictory, or the other features which are, as they state, prejudicial, and we do not think we should be asked to search the record to find such error.

The seventh objection relates to the sufficiency of the evidence. It is asserted that William and Robert Christian and James Casey were not lawfully held in jail, under the evidence in the case, and that the instruction of the court to the effect that if the jury should find that they were held be virtue of the orders of the courts in Pottawatomie and Canadian counties, then they should find that they were lawfully held, is erroneous; that the only authority of a jailor is the order of commitment. Even if we could consider the contention raised by counsel for appellant we would hold that where the orders were shown to have been issued by the courts, the presumption obtains to the effect that they were delivered to the jailor and that it would be incumbent upon him to show that they were not so delivered, and that he was not lawfully holding the prisoners, but it might be well, also, to state in this connection, that where a jailor receives a prisoner unlawfully, he cannot be permitted to show his unlawful act for the purpose of escaping the punishment which the law justly apportions to those who assume a public duty and willfully or carelessly perform such duty.

The other assignments of error are waived by virtue of the agreement. We are of the opinion that no prejudicial error has been shown by this appeal, and that the judgment of the lower court should be affirmed.

All the Justices concurring.